UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| M.M., by Next Friend, LATANYA ASHMORE, | ) ) ) |
| Plaintiff, | ) ) ) Case No. 1:14-cv-00424-DML-WTL |
| vs. | ) ) |
| INDIANAPOLIS PUBLIC SCHOOLS, | ) ) |
| Defendant. | ) |

## Order on Defendant's Motion for Partial Summary Judgment and to Relinquish Jurisdiction over the State Law Claim

Defendant Indianapolis Public Schools ("IPS") has moved for summary judgment on the plaintiff's federal law claims, which are (1) a claim under 28 U.S.C. § 1983 based on a violation of due process under the Fourteenth Amendment and (2) a claim under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*. IPS also asks the court to relinquish supplemental jurisdiction over the plaintiff's state law negligence claim. Because the undisputed facts and governing law entitle IPS to judgment as a matter of law on the federal claims and because it is appropriate no longer to exercise supplemental jurisdiction over the state law negligence claim under 28 U.S.C. § 1367(c)(3), the court GRANTS the defendant's motion.

The parties consented to this magistrate judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

## Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion and of identifying the evidence it believes demonstrates the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The nonmovant may not rest on her pleadings, but must designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. The plaintiff did not file a response to IPS's summary judgment motion. Therefore, under Local Rule 56-1(f)**,** all of IPS's factual assertions supported by admissible evidence are deemed true.

## Analysis

**A.    The material facts are undisputed.**

IPS has submitted admissible evidence of the following facts, which are undisputed for purposes of its summary judgment motion.

Plaintiff M.M., a female student who was in the sixth grade, was sexually assaulted by three male sixth-grade fellow students in a girls' bathroom during the school day on September 20, 2012, at IPS School 103. (*See* Report to Child Protective Services, Dkt. 28, at p. 36). The four children were assigned to the same classroom. (Deposition of M.M., Dkt. 28, Trans. at p. 8).[1] Before the assault on

---

[1]    The evidence cited herein is part of Dkt. 28. The transcript of M.M.'s deposition appears at pages 4-13. The transcript of her mother's deposition, Latanya Ashmore, appears at pages 14-18. The transcript of one of the male

September 20, 2012, IPS was not aware of any hostility between the boys and M.M. (IPS's answer to interrogatory 7, Dkt. 28 at p. 28). M.M. testified that none of them had been a person she worried about or wanted to avoid (M.M. Trans. at p. 9), and her mother knew of no problems M.M. had had with these boys. (Ashmore Trans. at p. 12).

On September 20, 2012, the three sixth-grade boys (M.J., E.M., and H.E.) devised a plan to get passes from teachers to leave their classroom at about the same time. (M.J. Trans. at pp. 12-13). One boy had a pass to leave with a tutoring instructor for work in another classroom and then obtained permission from that teacher to use the bathroom. (*Id.* at pp. 13-14). The other two obtained passes from their classroom teacher to go to the bathroom. (*Id.* at 12-14). Once in the school hallway, the boys wandered from their second floor classroom to the first floor for a couple minutes, and then ran back up to the second floor when they heard a teacher coming their way. (*Id.* at 16). In the meantime, the plaintiff had been given permission to leave the classroom to see the school nurse. (M.M. Trans. at p. 13). On her way back from the nurse, she received permission from a teacher to use the restroom. (*Id.* at p. 14).

---

students, M.J., appears at pages 19-24. The court's citations to deposition testimony refer to the pages of the transcripts on which the testimony appears. IPS's answers to interrogatories appear at pages 25-30 of Dkt. 28, and its responses to document requests including responsive documents appear at pages 31-47.

According to M.M.,[2] after opening the stall door in the restroom to leave the stall, the three boys were standing there in the girls' restroom. (*Id.* at pp. 16 and 20). The boys confronted her, pushed her to the floor inside the stall, and held her down. (*Id.* at pp. 17 and 21). At least one of them pulled off her pants and touched her genital area, and one of them took off her shirt and fondled her chest. (*Id.* at 17 and 29-31). M.M. cried and yelled to be left alone. Another student who was outside the restroom and apparently heard commotion in the restroom[3] yelled that a teacher was coming. (*Id.* at pp. 17 and 22-23). The boys moved to another spot in the restroom. M.M. left the restroom (*id.* at p. 18) and a teacher, who had been fetched by a different student, arrived. (*Id.* at pp. 18 and 23). M.M. and the teacher went into a classroom and M.M. "explained everything." The teacher said she was going to call the police. (*Id.* at pp. 18, 24, and 39). Police officers arrived at the school and talked to M.M. about what had happened. (*Id.* at p. 40). The parents of M.M. and the three boys were called and the police interviewed the three boys in the presence of their parents. (*See* investigative report, Dkt. 28, at pp. 33-35).

---

[2]   M.M.'s deposition testimony differs from the testimony of M.J. (one of the three boys) in some respects. For example, M.J. testified the boys saw M.M. in the hallway. Then, M.M. went into the girls' bathroom, one boy went with her, and another of the boys (neither one of them being M.J.) followed after a couple of minutes. (M.J. Trans. at pp. 17-18). The differences in their testimony are not material to the issues on summary judgment. For purposes of summary judgment, the court credits M.M.'s version.

[3]   There apparently is no outer door from the school hallway into the bathroom. The entrance to the bathroom is an opening that jogs at an angle so that the interior of the bathroom is not visible from the hallway. (M.J. Trans. at pp. 19-20).

The three boys were immediately suspended from school for six days pending the initiation of an expulsion proceeding and further police investigation. (*Id.,* Dkt. 28 at p. 35). The boys never returned to School 103 from their suspensions because they were expelled for the remainder of the school year. (*See* Principal's Report of Title IX Investigation, Dkt. 28, at p. 45). Plaintiff M.M. did not wish to continue attending School 103 and, after spending two or three weeks at home, she transferred to a different IPS school, to which IPS arranged her bus transportation. (Ashmore Trans. at pp. 21-22).

The day after the assault, IPS made a formal report to Indiana's Department of Child Protective Services. (*See* report, Dkt. 28 at p. 36). Also the next day, the school social worker conducted counseling and education sessions with students in the 4th, 5th, and 6th grades. (Social Worker Report, Dkt. 28, at p. 37). Students were told not to gossip about the incident and were encouraged to attend one-on-one counseling sessions to express concerns or worries. (*Id.*). In the following months, presentations were made to students regarding bullying and body safety. (*Id.* at pp. 37-38).

## B. **IPS is entitled to judgment on plaintiff's federal claims.**

M.M.'s complaint brings two federal claims. The court will first address the Title IX claim and then the Fourteenth Amendment due process claim.

### 1. **There is no showing of actual knowledge or deliberate indifference by IPS to support a Title IX claim.**

Title IX of the Education Amendments of 1972 provides in relevant part: "No person in the United States shall, on the basis of sex, be excluded from participation

5

in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

In *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629 (1999), the Court decided the circumstances under which a recipient of federal educational funds (such as IPS) can be held civilly liable for damages where the claim arises from student-on-student sexual harassment. Title IX fund recipients can be liable only for their own misconduct. *Id.* at 640-41. When a claim arises out of student-on-student sexual harassment, the school is not liable unless the plaintiff proves the school was deliberatively indifferent to acts of sexual harassment of which it had actual knowledge and which were so "severe, pervasive, and objectively offensive that [the school] can be said to [have] deprive[d] the victim[s] of access to the educational opportunities or benefits provided by the school." *Id.* at 650.

Evidence submitted by IPS demonstrates that until M.M. reported the assault to school officials, IPS was not aware of any misconduct that could be characterized as sexual harassment involving the three boys or directed at M.M. The lack of actual knowledge prevents liability based on the assault itself. *Gabrielle M. v. Park Forest-Chicago Heights, IL Sch. Dist. 163,* 315 F.3d 817, 823 (7th Cir. 2003) ("school district can only be liable for harassment about which it has actual knowledge").

In addition, undisputed facts demonstrate that IPS was not deliberately indifferent when it learned of the assault. Deliberate indifference to peer-on-peer harassment requires a showing that the school's "response to the harassment or

lack thereof is clearly unreasonable in light of the known circumstances." *Davis,* 526 U.S. at 648. Once school officials receive actual notice of harassment, they are required to act. *Gabrielle,* 315 F.3d at 824. "But as long as the school's response is not 'clearly unreasonable,' it cannot have acted with the requisite deliberate indifference to incur Title IX liability." *Id.* In some cases, the court can decide as a matter of law that the school's response was not clearly unreasonable. *Id.* IPS urges that this is one of those cases. The court agrees.

As soon as M.M. reported the assault, IPS officials called the police, who conducted interviews of M.M. and the three boys. The three boys were suspended immediately on the day of the assault, and eventually expelled. M.M. was permitted to change schools, at her request, and bus transportation was arranged for the new school. The day after the assault, a school social worker addressed the incident with fourth through sixth grade students, prohibited gossip about it, and invited one-on-one counseling. Later, presentations were made to all students regarding body integrity and bullying.

M.M., who did not respond to IPS's summary judgment motion, has not offered any evidence or argument suggesting the unreasonableness of any of IPS's actions. The court finds that no jury could decide that IPS's response to the harassment was "clearly unreasonable in light of the known circumstances." *See also Gabrielle,* 315 F.3d at 823 (7th Cir. 2003) (affirming summary judgment in favor of school because the evidence did not permit an inference that the school was deliberately indifferent to a male student's harassment of Gabrielle; school

7

separated the male student from Gabrielle, and reassigned him to a different classroom and recess and lunch periods).

Because the undisputed facts negate essential elements of M.M.'s Title IX claim, IPS is entitled to summary judgment on Count II of M.M.'s complaint.

## 2. IPS is entitled to summary judgment on the Fourteenth Amendment claim.

M.M.'s complaint asserts in Count III that the school's actions or inactions in connection with the assault violated her due process rights under the Fourteenth Amendment. She alleges that IPS deprived her of her right to "bodily integrity and physical safety secured by the Due Process Clause" when it failed to protect her and prevent the assault. (*See* Complaint, ¶ 19). She seeks relief under 28 U.S.C. § 1983, which allows recovery against a state actor who, under color of law, deprives another of a constitutional right.

As IPS points out in its motion, the due process clause itself does not require "the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 195 (1989). In very limited circumstances, however, the State may have affirmative duties of care and its failure to discharge those duties may be so egregious to constitute a substantive due process violation. *See id.* at 198-200. As explained by the Seventh Circuit, it has recognized "two such 'limited circumstances': 'One exists if the state has a special relationship with a person, that is, if the state has custody of a person, thus cutting off alternate avenues of aid. The other is the state-created danger exception.'" *Martin v. Shawano-Gresham Sch. Dist.,* 295 F.3d 701, 708 (7th

8

Cir. 2002) (internal citation omitted). The first circumstance is not recognized as applicable to public school students. *Id.* at 708 n.6 (noting its rejection of notion that a school has a "special custodial relationship" with its students for purposes of the *DeShaney* exception). *See also J.O. v. Alton Community Unit School Dist. 11,* 909 F.2d 267, 272 (7th Cir. 1990) ("[T]he government, acting through local school administrators, has not rendered its schoolchildren so helpless that an affirmative constitutional duty to protect arises. Whatever duty of protection does arise is best left to laws outside the Constitution. . . ."); *Stevens v. Umsted,* 131 F.3d 697, 704 (7th Cir. 1997) ("[A]s [the student] was not in state custody, the complaint fails to allege facts sufficient to outline the existence of a state duty to protect him from private actors under the 'custody' exception as outlined in *DeShaney* and its progeny.")

The state-created danger exception applies in "rare" and "narrow" circumstances where "the state *affirmatively* places a particular individual in a position of danger the individual would not otherwise have faced." *Doe v. Village of Arlington Heights,* 782 F.3d 911, 916 (7th Cir. 2015) (emphasis added; internal quotation and citation omitted). M.M. has not designated any evidence taken by school officials to affirmatively place her in danger and made no arguments to support the applicability of the exception in her case. The court will not construct legal arguments for her. Instead, it finds that IPS met its burden on summary judgment to demonstrate the absence of a genuine dispute of a material fact and its entitlement to judgment on M.M.'s Fourteenth Amendment due process claim. IPS is entitled to judgment on Count III of M.M.'s complaint.

## C. The court relinquishes supplemental jurisdiction.

When federal law claims are dismissed before trial, the district court should decide whether to maintain or relinquish its supplemental jurisdiction over state law claims. Relevant factors to inform the decision are judicial economy, convenience, fairness, and comity. *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343 (1988). Ordinarily, the court should relinquish jurisdiction when the federal claims are disposed of before trial. *Sharp Elecs. Corp. v. Metropolitan Life Ins. Co.,* 578 F.3d 505, 514 (7th Cir. 2009). There is no reason not to apply the ordinary rule here. This court has not expended any effort on M.M.'s state law negligence claim. The claim can be efficiently adjudicated in state court before a state court tribunal, just as the plaintiff desired at the commencement of this litigation. (IPS removed the complaint to this court.)

The court declines to exercise supplemental jurisdiction over M.M.'s negligence claim in Count I of her complaint and remands that sole remaining claim to Marion Superior Court.

## Conclusion

For the foregoing reasons, IPS's motion for summary judgment (Dkt. 26) is GRANTED. IPS is entitled to judgment as a matter of law on the plaintiff's federal law claims under Title IX and 28 U.S.C. § 1983 in Counts II and III of her complaint. The remaining state law claim for negligence (Count I) is REMANDED

10

to the Marion Superior Court.  A separate judgment will issue in favor of IPS on Counts II and III.

    So ORDERED.

    Dated:  May 22, 2015

                                                Debra McVicker Lynch
                                                United States Magistrate Judge
                                                Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system